# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| HARKER'S DISTRIBUTION, INC., | |
| Plaintiff, | **No. 08-CV-4105-DEO** |
| vs. | **ORDER ON DEFENDANT'S MOTION** |
| FEDERAL INSURANCE COMPANY and CHUBB GROUP OF INSURANCE COMPANIES, | **TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| Defendants. | |

―――――――――――――

## I. INTRODUCTION AND BACKGROUND

This matter is before the Court on Defendant Federal Insurance Company's (hereinafter "Federal")[1] motion to dismiss Plaintiff Harker's Distribution's (hereinafter "Harker's") petition pursuant to Federal Rule of Civil Procedure 12(b)(6). Harker's originally brought this action in the Iowa District Court for Plymouth County and alleged that Federal breached its duty to defend and indemnify Harker's under the Directors and Officers Liability insurance policy with respect to prior litigation filed against Harker's by Larry McMillan, a former employee and shareholder of Harker's. Federal removed the

―――――――――――――

[1] The parties have indicated that "Chubb" is merely a trade name and that Federal is the appropriate insurer in this case.

case to this Court and filed a motion to dismiss, arguing the claims from the underlying litigation were not covered under the Directors and Officers Liability policy.

**A.   The Insurance Policy**

Federal issued an insurance policy to Harker's, which included a Directors and Officers Liability coverage section (the "Policy") and corporate liability coverage under the Policy.  The general corporate liability coverage in Section I(C) of the Policy states as follows:

> (C)      Corporate   Liability   Coverage
> (Optional)
>
> If  the  Corporate  Liability  Coverage  is
> purchased  as  set  forth  in  Item  3  of  the
> Declarations of this Coverage Section, the
> Company [insurer] shall pay Loss on behalf
> of the Insured Organization resulting from
> any Insured Organization Claim first made
> against  such  Insured  Organization  during
> the   Policy   Period,   or   any   applicable
> Extending Reporting Period, for Wrongful
> Acts.

"Loss"  is  defined  in  Section  II(L)  of  the  Policy  as follows:

> Loss  means  the  total  amount  which  any
> Insured becomes legally obligated to pay as
> a  result  of  any  Claim  made  against  any
> Insured for Wrongful Acts, including, but
> not limited to, damages (including punitive
> or  exemplary  damages,  to  the  extent  such

2

damages are insurable under the law of any
jurisdiction which has a substantial
relationship to the Insureds, the Company,
this Policy or the Claim and which is most
favorable to the insurability of such
damages), judgments, settlements, pre-
judgment and post-judgment interest and
Defense Costs.

"Loss" does not include: "(2) matters uninsurable under

the law pursuant to which [the] Policy is construed." Section

II(L)(2).

"Wrongful Act" is defined in Section II(U) of the Policy

as:

(1) any error, misstatement, misleading
statement, act, omission, neglect, or
breach of duty committed, attempted, or
allegedly committed or attempted by ...
(b) ... any Insured Organization.

Section II(U)(1).

There is one policy exclusion at the center of dispute in

this case. Section III(C)(2) of the Policy (hereinafter the

"Contractual Liability Exclusion") excludes coverage for any

Insured Organization claim:

based upon, arising from, or in consequence
of any actual or alleged liability of an
Insured Organization under any written or
oral contract or agreement, provided that
this Exclusion (C)(2) shall not apply to
the extent that an Insured Organization
would have been liable in the absence of

3

the contract or agreement.

Section IX(A)(1) of the General Terms and Conditions section of the Policy also provides that Federal "shall have the right and duty to defend any Claim covered by [the] Policy."

**B.    Underlying Litigation in <u>McMillan v. Harker's</u> <u>Distribution, Inc.</u>**

McMillan was an employee and a shareholder of 5,297 shares of Class A common voting stock of Harker's. Harker's terminated McMillan in 2001, and McMillan subsequently sued Harker's because Harker's failed to redeem his common shares of stock. In a nine paragraph petition filed in the Iowa District Court for Plymouth County, McMillan alleged, in part, the following:

> 3.    [McMillan] is the owner of 5,297 shares of Class A common voting stock of [Harker's].
>
> 4.    [Harker's] articles of incorporation provide that it may not make any payment, benefit or preference to any share of the Class A common stock without offering such payment, benefit or preference to all shares of common stock.
>
> 5.    Between September 30, 2000 and September 29, 2001 [Harker's] redeemed 500

shares of Class A common stock for $79,500, or $159.00 per share.

6. [Harker's] did not offer such payment, benefit or preference to [McMillan].

7. [McMillan] has made a demand upon [Harker's] to do so, but [Harker's] has refused.

8. [McMillan] has performed all conditions precedent to his right to receive such payment, benefit or preference.

9. By reason of [Harker's] breach of its articles of incorporation, [McMillan] has been damaged in the amount of $842,223.00.

Doc. No. 1-3 at 24.

After trial, the Iowa District Court for Plymouth County issued its ruling in favor of McMillan and summarized McMillan's claim as follows:

[McMillan's] claim is relatively simple ... [McMillan] claims that when his employment was terminated in 2001, his shares were not redeemed by the corporation at fair market value. He provides a list of sixteen other terminated shareholders and employees whose shares were redeemed upon their termination. He offers testimony that he was the only terminated employee ... whose shares had not been redeemed by the company.

Dist. Ct. Order 3-4. The court continued:

> One of [McMillan's] theories of recovery is that the Articles of Incorporation required that the treatment of any common stock of one shareholder requires identical treatment of all other shareholders of the same class... [McMillan] also claims that he was the only shareholder, whose employment was terminated, whose shares were not redeemed at fair market value as part of the termination.

Dist. Ct. Order 4 (emphasis added).

The district court determined that the language of the Shareholders' Agreement imposed certain duties on the corporation that were breached and found that Harker's violated the specific terms of the Shareholders' Agreement. The court further found that Harker's failed to notify the other shareholders of the opportunity to purchase McMillan's shares. Thus, the court found that "[McMillan's] cause of action for breach of contract against [Harker's] [was] proven by a preponderance of the evidence..." Dist. Ct. Order 15.

In its ruling, the district court further stated:

> [t]his court does not believe that the legislature, the incorporators or the parties to the stockholder agreement in this case would have ever contemplated that the company could fire 17 employees/stockholders and elect to redeem the shares of 16 and not the shares of the other one, leaving his capitol tied up in a corporation for which he does not work

> and over which he has absolutely no
> control, without at least attempting to
> value the shares, place a potential
> redemption before the bank and the board,
> and notifying other shareholders if the
> company failed to redeem. This was done in
> <u>every</u> case except McMillan's.

Dist. Ct. Order 8. The court noted that Harker's was not a
publicly traded company and that it was likely that McMillan
would "never have any opportunity whatsoever to redeem his
shares at the fair market value, unless the entire company
[was] sold to a third party at a fixed share price. All other
terminated employees have already enjoyed that opportunity."
Dist. Ct. Order 8-9.

The district court was also particularly critical of
Harker's President and CEO, Ronald Geiger. The court found
that Geiger had a contractual duty to take McMillan's
redemption request to the board of directors or to inquire of
the possibility for BancBoston, an equity shareholder of
Harker's, to redeem the shares. Also, while Geiger claimed
that Harker's did not have the funds to redeem McMillan's
shares, Geiger admitted that just six months prior to making
that claim, Geiger redeemed his own stock for $100,000 and
another presumably terminated employee's stock for $70,000.

Harker's unsuccessfully appealed the district court's
judgment to the Iowa Court of Appeals.  In its ruling, the
court of appeals affirmed the district court's finding that
Harker's breached it Shareholders' Agreement and found no
reversible error in the district court's decision.

## II.  LAW AND ANALYSIS

The issue on a motion to dismiss for failure to state a
claim pursuant to Fed. R. Civ. P. 12(b)(6) is not whether a
plaintiff will ultimately prevail, but whether the plaintiff
is entitled to offer evidence to support the claims.  United
States v. Aceto Agric. Chem. Corp., 872 F.2d 1373, 1376 (8th
Cir. 1989).  In considering a motion to dismiss under Rule
12(b)(6), the Court must assume that the factual allegations
in the plaintiff's complaint are true, and must construe them
in the light most favorable to the plaintiff.  Gross v. Weber,
186 F.3d 1089, 1090 (8th Cir. 1999).  "A court may dismiss a
complaint only if it is clear that no relief could be granted
under any set of facts that could be proved consistent with
the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73
(1984).

The Court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the Court must "reject conclusory allegations of law and unwarranted inferences." <u>Silver v. H&R Block, Inc.</u>, 105 F.3d 394, 397 (8th Cir. 1997). Conclusory allegations need not and will not be taken as true; rather, the Court will consider whether the facts alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted.

**A. Construction and Interpretation of the Policy Language**

An insurance policy is a contract which must be construed as a whole. <u>Cent. Bearings Co. v. Wolverine Ins. Co.</u>, 179 N.W.2d 443, 445 (Iowa 1970). The words in the policy must be given their ordinary meaning to achieve a fair and practical interpretation. <u>Id.</u> "If the words are fairly susceptible to two interpretations the one which will sustain the insured's claim will be accepted. Thus the policy will be strictly construed against the insurer." <u>Id.</u> With this in mind, the Court "should ascertain what an insured as a reasonable person would understand the policy to mean, not what the insurer

9

actually intended." Id. Furthermore, "[e]xclusion provisions in insurance policies are construed strictly against the insurer." Ferguson v. Allied Mut. Ins. Co., 512 N.W.2d 296, 299 (Iowa 1994). Finally, the "construction of an insurance policy — the process of determining its legal effect — is a question of law for the court." A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am., 475 N.W.2d 607, 618 (Iowa 1991).

The primary question in this case is whether Federal had a duty to defend and indemnify Harker's in the underlying litigation pursuant to the terms of the Policy. The answer to this question depends largely on interpretation of the Policy and whether the exception to the Contractual Liability Exclusion applies.[2] Federal argues that it had no duty to defend and indemnify Harker's under the Contractual Liability Exclusion because the underlying litigation was based solely

---

[2] As set out on pages 3-4 of this Order, the Contractual Liability Exclusion in Section III(C)(2) of the Policy excludes coverage for any claim made against Harker's "based upon, arising from, or in consequence of any actual or alleged liability of [Harker's] under any written or oral contract or agreement..." Section III(C)(2) of the Policy also provides the exception to the Contractual Liability Exclusion and states that "Exclusion (C)(2) shall not apply to the extent that [Harker's] would have been liable in the absence of the contract or agreement."

on a breach of contract.  Federal further maintains that Iowa and federal law support the conclusion that because McMillan asserted a single count against Harker's for breach of its articles of incorporation and because the district and appellate court found Harker's liable on that basis, the terms of the Contractual Liability Exclusion apply.  Federal maintains that the underlying litigation forecloses any argument that Harker's "would have been liable in the absence of the contract" because the only claim asserted by McMillan was for a breach of contract.

Harker's, however, argues that the underlying litigation was covered under the Policy because McMillan's claims were not limited to breach of contract theories, and that coverage by Federal was required for losses associated with the underlying litigation.  For example, Harker's argues that McMillan's lawsuit could have been maintained in the absence of any contract if McMillan would have asserted claims for breach of fiduciary duties, oppression, and/or independent tort ex delicto.  Thus, Harker's position is that the exception to the Contractual Liability Exclusion applies in this case.  Harker's reasoned that the correct interpretation

"turns not on the question of whether McMillan sued under non-contractual theories, but instead asks if he could have and, if he did, whether [Harker's] 'would have been liable' under those theories." Harker's Br. 13. Harker's therefore argues that the correct application of the exception to the Contractual Liability Exclusion is to first examine whether other potential claims exist solely based on a breach of contract. If they do not, then Harker's argues that coverage under the Policy should not be barred so long as the potential claim falls within the definition of "wrongful act" under the Policy. Harker's Br. 28.

In this case, the Court is persuaded that both parties have set forth reasonable arguments and have asserted reasonable interpretations with respect to the Contractual Liability Exclusion and its exception. However, in this Court's view, Federal's interpretation is contrary to what an insured as a reasonable person would understand the policy to mean. Under Federal's proposed interpretation, a third party who sues the insured must assert a cause of action independent of and in addition to a breach of contract for the exception to the Contractual Liability Exclusion to potentially apply.

However, in a case like the underlying litigation in which Harker's was clearly liable to McMillan under the Shareholders' Agreement, the Court understands why McMillan may have only expressly asserted a breach of contract claim as the basis for his lawsuit. Harker's, however, could not control which legal theory or theories McMillan pled and the Court certainly would not expect a reasonable insured to understand the exception to the Contractual Liability Exclusion to depend solely on the decisions of a third party.[3]

Moreover, Harker's paid for optional corporate liability coverage in addition to its general Directors and Officers

_____

[3] See also Employers Mut. Cas. Co. v. Cedar Rapids Television Co., 552 N.W.2d 639, 643-44 (Iowa 1996), which states:

> The insured can control his own conduct and insure against damages arising from such conduct. An insured has no control over which of possibly several applicable legal theories a plaintiff may choose to invoke in a lawsuit against him. It would be inequitable to allow the plaintiff to determine whether the defendant is or is not insured simply by the choice of legal theories under which he brings suit. Insurance coverage is predicated on the assessment of the risk involved should the insured participate in a particular type of conduct and not the risk of the plaintiff's choice of legal theories.

Liability policy to avoid such problems with its coverage. The Contractual Liability Exclusion in the Policy is listed under the exclusions to the optional corporate liability coverage, which Harker's purchased. The Court cannot find that Harker's would have spent the additional funds to obtain this optional coverage had it reasonably believed the exception to the Contractual Liability Exclusion would prohibit recovery in cases similar to the underlying litigation in this case.

In strictly construing the Policy against Federal while considering what an insured as a reasonable person would understand it to mean, the Court will not adopt Federal's interpretation of the Contractual Liability Exclusion and its exception in this case. Thus, the exception to the Contractual Liability Exclusion required Federal to consider whether McMillan could have asserted a claim against Harker's for its wrongful acts under a legal theory independent of any contract, and if so, whether Harker's would have been liable to McMillan under that theory.

**B.  Duty to Defend**

The Court must also consider the relevant Iowa case law

governing an insurer's duty to defend and/or indemnify. "An insurer has a duty to defend whenever there is potential or possible liability to indemnify the insured based upon the facts appearing at the outset of the case." <u>Wells Dairy, Inc. v. Travelers Indem. Co. of Ill.</u>, 241 F. Supp. 2d 945, 957 (N.D. Iowa 2003) (citing <u>First Newton Nat'l Bank v. Gen. Cas. Co. of Wis.</u>, 426 N.W.2d 618, 623 (Iowa 1988) and <u>McAndrews v. Farm Bureau Mut. Ins. Co.</u>, 349 N.W.2d 117, 119 (Iowa 1984)); <u>see also</u> <u>Yegge v. Integrity Mut. Ins. Co.</u>, 534 N.W.2d 100, 102 (Iowa 1995) (with respect to the duty to defend and duty to indemnify, "[t]he two duties are clearly co-extensive ... there is no duty to defend unless there is a duty to indemnify"). Traditionally, facts at the outset of the case are those alleged in the petition in the lawsuit against the insured. <u>McAndrews</u>, 349 N.W.2d at 119. The insurer, however, must sometimes expand its scope of inquiry beyond the petition, "especially under notice pleading petitions which often give few facts upon which to assess an insurer's duty to defend." <u>Id.</u> In such cases, the insurer may look to any other admissible and relevant facts in the record. Moreover, "[i]t is the allegations of fact in the underlying complaint,

15

not the legal labels under which a plaintiff decides to seek relief, that determine the scope of the duty to defend." Liberty Mut. Ins. Co. v. Pella Corp., 633 F. Supp. 2d 714, 721, 2009 WL 1904397, at *6 (S.D. Iowa 2009) (citing Employers Mut. Cas. Co. v. Cedar Rapids Television Co., 552 N.W.2d 639, 642 (Iowa 1996) (noting "it is clear under Iowa law that an insurance company is to look at the allegations of fact in the third-party plaintiff's petition against the insured and not the legal theories on which the third-party claims insured is liable.")).

"On the other hand, an insurer is not required to provide a defense when no facts presently available to it indicate coverage of the claim, merely because such facts might later be added by amendment or introduced as evidence at the trial." Wells Dairy, 241 F. Supp. 2d at 957 (citing McAndrews, 349 N.W.2d at 119). Furthermore, "[t]he insurer has no duty to defend if after construing both the policy in question, the pleadings of the injured party and any other admissible and relevant facts in the record, it appears the claim made is not covered" by the insurance policy. Id.; see also Cent. Bearings, 179 N.W.2d at 445. However, "'[i]f any claim

16

alleged against the insured can rationally be said to fall within [the policy's] coverage, the insurer must defend the entire action. In case of doubt as to whether the petition alleges a claim that is covered by the policy, the doubt is resolved in favor of the insured.'" <u>Liberty Mut.</u>, 633 F. Supp. 2d at 721, 2009 WL 1904397, at *6 (quoting <u>Employers Mut.</u>, 552 N.W.2d at 641 (in turn quoting <u>A.Y. McDonald Indus.</u>, 475 N.W.2d at 627)).

With these principles in mind, the Court is persuaded that Harker's has alleged sufficient facts which, if proven, may entitle it to some relief here. A closer review of the petition and facts at the outset of the underlying litigation reveals that McMillan sued Harker's after he was terminated because Harker's failed to redeem McMillan's stock upon McMillan's request, even though Harker's previously redeemed the stock of sixteen other terminated employees. While the district court ultimately found Harker's liable based on a breach of the Shareholders' Agreement, the district court alluded to numerous wrongdoings of Harker's and its President and CEO, Geiger. Paragraphs 5-7 of the underlying petition should, at the very least, have caused Federal to consider

claims aside from the breach of contract theory expressly alleged in the petition.[4] Moreover, the district court, in summarizing McMillan's claim as "simple," similarly set forth facts which were likely known at the outset of the case and which Federal should have considered. As previously mentioned, the court stated:

> [McMillan] claims that when his employment was terminated in 2001, his shares were not redeemed by the corporation at fair market value. He provides a list of sixteen other terminated shareholders and employees whose shares were redeemed upon their termination. He offers testimony that he was the only terminated employee ... whose shares had not been redeemed by the company.

Dist. Ct. Order 3-4. The court continued:

> <u>One</u> of [McMillan's] theories of recovery is that the Articles of Incorporation

---

[4] Paragraphs 5-7 of the petition state:

> 5. Between September 30, 2000 and September 29, 2001 [Harker's] redeemed 500 shares of Class A common stock for $79,500 or $159.00 per share.
>
> 6. [Harker's] did not offer such payment, benefit or preference to [McMillan].
>
> 7. [McMillan] has made a demand upon [Harker's] to do so, but [Harker's] has refused.

> required... [McMillan] <u>also</u> claims that he
> was the only shareholder, whose employment
> was terminated, whose shares were not
> redeemed at fair market value as part of
> the termination.

Dist. Ct. Order 4 (emphasis added).

As mentioned, the district court found liability based on Harker's breach of the Shareholders' Agreement; however, this Court is persuaded that the facts available at the outset of the underlying litigation as alleged in the petition by McMillan showed the potential for recovery under other legal theories, of which Federal should have been aware. Harker's argued that McMillan was entitled to relief from Harker's under several causes of action at the outset of the underlying litigation, including breach of fiduciary duty of care by Geiger, breach of fiduciary duty of equitable treatment to minority shareholders by Harker's, oppression, and the independent tort of ex delicto.[5] In response, Federal argued

---

[5]   [W]here a contract imposes a duty upon a
person, the neglect of that duty is a tort,
and an action ex delicto will lie.  A tort
may be dependent upon, or independent of,
contract.  If a contract imposes a legal
duty upon a person the neglect of that duty
is a tort founded on contract; so that an
action ex contractu for the breach of
                                (continued...)

19

Harker's would not be liable for these causes of action, or in any event, would not be the appropriately named defendant. The Court agrees with Federal that some of these causes of action would be more commonly brought as derivative actions against majority shareholders; however, individual actions alleging, for example, breach of fiduciary duty against a director (and thus the company) are feasible under certain conditions.[6] Moreover, many of these causes of action may exist independently of a contract, either by statute or common law.[7] Thus, the Court agrees with Harker's that McMillan's

---

[5](...continued)
> contract, or an action ex delicto for the breach of duty, may be brought at the option of the plaintiff.

Chrischilles v. Griswold, 150 N.W.2d 94, 98-99 (Iowa 1967) (internal quotations omitted).

[6] See, e.g., Rieff v. Evans, 630 N.W.2d 278, 291 (Iowa 2001) ("[W]hether a fiduciary relationship exists between the policyholders of Mutual and the directors of Group and Group itself is a difficult question for resolution by a motion to dismiss." ... "Clearly, Mutual's directors owe a fiduciary duty to its policyholders... The question becomes do those directors in their capacity as Group's directors, and therefore, Group itself owe a similar duty under these unique circumstances and corporate arrangements?").

[7] Harker's argues McMillan could have asserted a claim of "tort ex delicto," which Harker's argues would be covered
(continued...)

petition invoked other potentially successful legal theories. However, the Court does not deem it appropriate at this time to engage in exhaustive analysis of these theories without providing the parties further opportunity for discovery and/or additional briefing in support of a motion for summary judgment or trial.

**III.     CONCLUSION**

For the reasons cited herein, Harker's has alleged sufficient facts which, if proven, may entitle Harker's to relief in this case. Federal's motion to dismiss will be denied.

**IT IS THEREFORE HEREBY ORDERED** that Defendant Federal's motion to dismiss, Doc. No. 5, is **denied**.

The Court further reminds the parties pursuant to Chief Magistrate Judge Zoss' Order of March 11, 2009, that the

---

[7](...continued)
under the Policy; however, the Court is persuaded the claim is dependent on a contractual duty, since the neglect of such duty is required to successfully assert the action. Chrischilles, 150 N.W.2d at 98-99. Thus, this claim would be excluded under the Contractual Liability Exclusion in the Policy.

parties must file a proposed Scheduling Order and Discovery Plan **within 15 days** from the date of this Order.

      **IT IS SO ORDERED** this 30th day of September, 2009.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa